UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| D.B., a minor, by and through his parent and guardian, SHARON BROGDON, and SHANA MILLER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: 3:06-CV-86 (VARLAN/SHIRLEY) |
| STEVE LAFON, in his individual and official capacities; MARK WILLIAMSON, in his individual and official capacities, and BLOUNT COUNTY SCHOOL BOARD, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs, two students at William Blount High School in Blount County, Tennessee, allege defendants, Blount County school officials, harassed them in retaliation for D.B.'s initiation of a federal civil action against defendants Lafon and Blount County School Board.

This civil action is now before the Court for consideration of plaintiffs' motion for preliminary injunction and temporary restraining order [Doc. 2]. Plaintiffs seek an order requiring that:

> Shana Miller be transferred out of defendant Williamson's class, that defendants Williamson and Lafon stay at least fifty feet away from Ms. Miller and DB, that defendants Williamson and Lafon make no attempt to communicate directly or indirectly with Ms. Miller or DB, and that any administrative or disciplinary matters involving Shana or DB be handled by school officials other than defendants Williamson or Lafon.

Doc. 2 at 1-2. Plaintiffs argue that a preliminary injunction is appropriate because Ms. Miller will suffer irreparable harm without it, a preliminary injunction would have a minimal effect

on defendants, plaintiffs are likely to succeed on the merits of their claims, and imposition of a preliminary injunction is not adverse to the public interest. *See id.* at 4-7. Defendants respond in opposition to the motion, generally rebutting each of plaintiffs' arguments. *See* Doc. 7 at 3-9.

The issues have been briefed, the Court has reviewed the record and legal authorities, and the motion is now ripe for disposition. For the reasons discussed herein, the Court will deny plaintiffs' motion.

**I.     Relevant Facts**

The Blount County Board of Education has adopted a dress code that applies to all high school students. *See* Doc. 7-4 at 5. That dress code prohibits students from wearing certain items, including the following:

> b. torn, cut-off, or damaged clothing.
>
> . . . .
>
> f. clothing which exhibits written, pictorial, or implied references to illegal substances, drugs or alcohol, negative slogans, vulgarities, or causes disruption to the educational process; wearing apparel that is sexually suggestive or that features crude or vulgar commercial lettering or printing and/or pictures that depict drugs, tobacco, alcohol beverages, racial/ethnic slurs or gang affiliation
>
> . . . .

*Id.*

On March 2, 2006, plaintiff D.B. and two other students initiated a federal civil action in this Court alleging violations of their First and Fourteenth Amendment rights because defendants Lafon and Blount County School Board prohibited them from wearing clothing

2

at school that depicts the confederate battle flag. *See D.B. ex rel. Brogdon v. Lafon, et al.*, 3:06-CV-75 (E.D. Tenn.). The defendants in that case banned depictions of the confederate battle flag because it allegedly "causes disruption to the educational process," which violates section 4f of the dress code. Neither plaintiff Miller or defendant Williamson are parties to that civil action. *See id.*

On March 3, 2006, shortly after defendant Lafon was served with process in that case, defendant Williamson sent plaintiff Miller, who is plaintiff D.B.'s girlfriend, and several other students who are not parties to either civil action to the principal's office for reported violations of the dress code. *See* Doc. 1 at 3. There is no allegation that plaintiff D.B. was among the group sent to the principal's office. *See id.* While at the principal's office, defendant Lafon told plaintiff Miller that her ripped jeans violated the dress code, presumably referring to section 4b of the dress code. *See id.*

Plaintiffs allege that defendant Lafon "forced Miller to pose while Lafon took close-up pictures of Miller's thighs." *Id.* at 3. In a declaration in support of the complaint, plaintiff Miller alleges that she began to cry when defendant Lafon took the photographs and that she told defendant Lafon she felt humiliated, but defendant Lafon responded by threatening to escort her from the school grounds if she did not cooperate. Doc. 1-2 at 1. Plaintiff Miller also states that defendant Lafon told her to lift her arms and continued taking pictures despite her objections. *Id.* Plaintiff Miller also notes that this incident took place where no other students or school officials were present and that none of the other students were photographed in this way. *Id.* at 2. Finally, as a result of these events, plaintiff Miller

3

complains that she has suffered humiliation, which has required her to seek medical attention and has prevented her from returning to school. *Id*. According to an affidavit submitted by defendant Williamson in support of an unrelated motion, plaintiff Miller transferred to another high school on March 22, 2006. *See* Doc. 11-3 at 2.

Plaintiffs do not allege that plaintiff D.B. experienced a similar incident, but the complaint alleges, "The events described above represent an escalation of harassment directed toward the plaintiffs and other students involved in litigation [related to the confederate battle flag] in this Court . . . ." Doc. 1 at 4. Thus, based on the events just discussed, plaintiffs allege three violations of plaintiffs' civil rights, actionable under 42 U.S.C. § 1983. Specifically, plaintiffs allege a violation of their First Amendment right to petition for redress of grievances and two violations of Fourteenth Amendment Due Process Clause arising from plaintiffs' denial of a public education and enforcement of a vague and overbroad dress code policy. *See id.* at 4-7. Plaintiffs also allege the Tennessee torts of intentional infliction of emotional distress, false imprisonment, and assault. *See id.* at 7-8.

In response to the instant motion, defendant Lafon filed an affidavit in which he generally denies plaintiffs' characterization of the incident involving plaintiff Miller. *See* Doc. 7-2 at 1-3. He explains that defendant Williamson sent four students, including plaintiff Miller, to the Student Affairs Office for violating the dress code. *See id*. at 2. Defendant Lafon asserts that he explained to the students that their options for remedying the dress code violation were to change clothes, participate in in-school suspension, or go home. *See id.* According to defendant Lafon, three students chose one of the options, but plaintiff Miller

4

protested that she had not violated the dress code. *See id.* Nevertheless, plaintiff Miller asked whether she could get a change of clothes from her boyfriend, and defendant Lafon said that she could, but she would have to wait until he came to the office. *See id.*

Defendant Lafon states that plaintiff Miller continued to protest and "pressed the issue for approximately twenty or thirty minutes." *Id.* at 2. Defendant Lafon asked Ms. Jennifer Moore, the substitute assistant principal, to "give her a second opinion." *Id.* According to defendant Lafon, and corroborated by Ms. Moore's affidavit, Ms. Moore indicated that the pants "were probably the worst she had seen." *Id. See also* Doc. 7-3 at 2.

With regard to the photographs, defendant Lafon states that he was concerned that plaintiff Miller would change clothes and deny the dress code violation, so he borrowed a camera to document the appearance of plaintiff Miller's pants. *See* Doc. 7-2 at 2. According to defendant Lafon, the photographs were taken in the hallway outside the Student Affairs Office and Assistant Principal's Office, and a teacher was nearby. *Id.* He states that he took one photograph of the lockers as a practice, then told plaintiff Miller not to cover the ripped pants with her arms, and took two pictures of the rips in plaintiff Miller's pants. *Id.*

## II. Discussion

A party seeking a temporary restraining or preliminary injunction order bears the burden of establishing four factors: (1) irreparable harm to movant if such an order is not entered; (2) likelihood of harm to others if such an order is entered; (3) movant's substantial likelihood of success on the merits; and (4) the impact on the public interest by entry of such

5

an order. *See Nightclubs, Inc. v. City of Paducha*, 202 F.3d 884, 887 (6th Cir. 2000); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

Turning to the irreparable harm factor first, the Court notes that plaintiff Miller transferred to another high school on March 22, 2006. Because she no longer attends the high school where the alleged incident occurred, there is no irreparable harm to her if the Court denies the requested relief. Since she has already transferred to another school, the Court does not need to transfer her to a different class or enjoin defendants Williamson and Lafon from approaching and handling administrative or disciplinary matters involving her. Furthermore, plaintiffs do not argue that plaintiff D.B. will suffer irreparable harm in the absence of the requested injunction. Accordingly, the irreparable harm factor weighs heavily against the requested relief.

Since plaintiff Miller no longer attends William Blount High School, there is little or no harm to others resulting from entry of the injunction with respect to her. In fact, the effect of the proposed injunction has likely already been accomplished since she is no longer in defendant Williamson's class, she is probably more than 50 feet from defendants Williamson and Lafon, and neither defendant has any administrative or disciplinary authority over her. With respect to plaintiff D.B., however, there is great harm to others resulting from entry of the requested relief since it would require defendant Lafon, the school principal, to avoid any place where plaintiff D.B. might be at any given time. This burden would prevent defendant Lafon from carrying out his responsibilities at the school by rendering certain places off-

6

limits at any given time. Accordingly, the harm to others factor weighs against the requested relief.

Turning to plaintiffs' likelihood of success on the merits plaintiffs argue that defendants retaliated against plaintiffs because plaintiff D.B. initiated a federal civil action challenging defendants' ban on depictions of the confederate battle flag on clothing.[1] General claims of retaliation brought under the Due Process Clause of the Fourteenth Amendment require a showing of "an egregious abuse of governmental power." *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (en banc), *quoted in Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). Claims of retaliation for the exercise of a specific constitutional right, in this case the right to petition for re-dress of grievances under the First Amendment, require a plaintiff to prove that: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing the protected conduct; and (3) the adverse action was motivated in part by plaintiff's protected conduct. *See Thaddeus-X*, 175 F.3d at 394.

With regard to a general retaliation claim, plaintiffs have not established a likelihood of success on the merits since they have not demonstrated that defendants' conduct is probably an egregious abuse of governmental power. The parties have markedly different interpretations of the events involving defendant Lafon's photography of plaintiff Miller's

---

[1] As they argue their positions regarding this factor in their respective briefs, both parties focus on plaintiffs' retaliation claim and do not address the substance of plaintiffs' other claims. *See* Docs. 2 at 5-6; 7 at 3-7. Therefore, the Court similarly limits its consideration of the likelihood of success on the merits factor to plaintiffs' retaliation claim.

7

ripped pants, but they all seem to agree that this incident arose out of plaintiff Miller's alleged dress code violation. *See* Docs. 1 at 3; 7-2 at 1-2. Whether or not plaintiff Miller was targeted based on her relationship to plaintiff D.B., defendants' attempts to enforce the dress code and to document violations thereof are probably not an egregious abuses of governmental power. *See Thaddeus-X*, 175 F.3d at 387.

Similarly, plaintiffs have not established a likelihood of success on the merits of a claim of retaliation for the exercise of the right to re-dress of grievances under the First Amendment. First, with respect to plaintiff Miller, she is not a party to the civil action that allegedly prompted the retaliation. Because plaintiff Miller did not participate in the protected activity, that is, the initiation of a federal civil action against defendants, she is not likely to recover for retaliation based on that activity. *See Thaddeus-X*, 175 F.3d at 394. Second, with respect to plaintiff D.B., who did participate in the protected activity, plaintiffs have not alleged what adverse action has been taken against him, except to say that the action taken against plaintiff Miller represented "an escalation of harassment." Doc. 1 at 4. Since they have not alleged any adverse action against plaintiff D.B., plaintiffs are not likely to recover for retaliation in response to his initiation of the federal civil action. *See Thaddeus-X*, 175 F.3d at 394. Accordingly, the likelihood of success on the merits factor weighs against the requested relief.

Consideration of the public interest factor is necessarily intertwined with the consideration of the likelihood of success on the merits because this case involves the alleged abrogation of constitutional rights. *See G & V Lounge, Inc. v. Michigan Liquor Control*

8

*Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (stating "It is always in the public interest to prevent the violation of a party's constitutional rights."); *Connection Distrib.*, 154 F.3d at 288 (public interest factor cannot be properly assessed without determining whether there is constitutional violation). Thus, just as the likelihood of success on the merits factor weighed against plaintiffs, so does the public interest factor.

**III. Conclusion**

For the reasons already discussed, plaintiffs' motion for preliminary injunction and/or temporary restraining order [Doc. 2] will be denied.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
